**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **HU HAOLIN,**<br><br>Plaintiff,<br><br>v.<br><br>**ALAB STORE, *ET AL*.,**<br><br>Defendants. | Civil Case No.: 2:25-cv-878<br><br>JURY TRIAL DEMANDED<br><br>FILED UNDER SEAL |

## COMPLAINT

Plaintiff Hu Haolin ("Plaintiff") hereby sues Defendants, Alab store and the other individuals, partnerships, and unincorporated associations as delineated in **Schedule A** hereto, (collectively "Defendants"), alleging as follows:

## INTRODUCTION

1. This action has been filed by Plaintiff to combat e-commerce store operators who trade upon Plaintiff's reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products using infringing and counterfeit versions of Plaintiff's federally registered trademark ROCKET BUBBLE (the "Counterfeit Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale, and/or selling Counterfeit Products to unknowing consumers in the United States, including Pennsylvania. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identity and the full scope and interworking of their infringing operation.

2. Plaintiff is forced to file this action to combat Defendants' infringement and counterfeiting of its federally registered trademark as well as to protect unknowing consumers from purchasing Counterfeit Products over the internet.

3. Plaintiff has been and continues to be irreparably damaged through loss of market share, loss of future sales, inability to realize a return on investment, consumer confusion, dilution, and tarnishment of its valuable ROCKET BUBBLE mark as a result of Defendants' actions and seeks injunctive and monetary relief.

## PARTIES

4. Plaintiff is an individual residing in the People's Republic of China. The ROCKET BUBBLE brand is personally owned and operated by Plaintiff.

5. Plaintiff is the owner of United States trademark ROCKET BUBBLE (Reg. No. 7,694,878) (hereinafter "Plaintiff's Mark"), and Plaintiff's Mark has been used in commerce since September 10, 2022. *See* **Exhibit A**. A true and correct copy of Plaintiff's Mark registration is attached as **Exhibit A**.

6. Plaintiff's Mark registration information is listed below:

| Registration Number | Plaintiff's Mark | Goods and Services |
|---|---|---|
| 7,694,878 | ROCKET BUBBLE | I.C. 28: Paintballs; Toy bubble-making solution; Toy guns; Toy water guns |

7. The ROCKET BUBBLE brand was established in 2022, and BUBBLE ROCKET brand products were sold on an Amazon.com platform the same year.

8. To distinguish and elevate the ROCKET BUBBLE brand, Plaintiff formed a design team responsible for product style, packaging design, and hangtag types for products sold under the ROCKET BUBBLE brand.

9. Plaintiff has invested up to $100,000.00 per year in product design and development of the ROCKET BUBBLE brand.

10. The products sold by Plaintiff under the ROCKET BUBBLE brand are primarily made through Amazon, providing convenient access to customers worldwide.

11. To further boost the ROCKET BUBBLE brand awareness, Plaintiff engaged in serious and effective advertising efforts on Amazon.

12. In 2022, Plaintiff's Amazon advertising expenses of products under the ROCKET BUBBLE brand reached about $60,000.00.

13. In 2023, Plaintiff's Amazon advertising expenses of products under the ROCKET BUBBLE brand increased to about $80,000.00. Additionally, in 2023, Facebook advertising was launched and advertising expenses of products under the ROCKET BUBBLE brand totaled about $10,000.00.

14. In 2024, Plaintiff's Amazon advertising expenses of products under the ROCKET BUBBLE brand further increased to about $90,000.00. Additionally, in 2024, Facebook advertising expenses of products under the ROCKET BUBBLE brand reached about $15,000.00.

15. In 2025, Plaintiff's Amazon advertising expenses of products under the ROCKET BUBBLE brand are projected to total about $100,000.00/year, with Facebook advertisements projected to total about $30,000.00/year.

16. In 2023, due to the success on other platforms, Plaintiff also expanded the ROCKET BUBBLE brand to the Walmart online platform. To quickly gain market share on the

Walmart platform, Plaintiff has invested about $100,000.00/year in advertising products under the ROCKET BUBBLE brand.

17. Plaintiff also built a U.S.-based logistics and warehouse system to meet Walmart's platform standards and enhance customer experience, resulting in an annual cost and investment of about $50,000.00/year.

18. As a result, the ROCKET BUBBLE brand is well-known throughout the United States and elsewhere as a source of high-quality products.

19. Plaintiff also owns common law trademark rights in its ROCKET BUBBLE trademark as a result of its long standing use. Plaintiff's Mark is also registered with the United States Patent and Trademark Office.

20. Plaintiff's products typically include at least Plaintiff's Mark. Plaintiff uses their trademark in connection with the marketing of their products.

21. The above U.S. registration for the Plaintiff's Mark is valid, subsisting, and in full force and effect. The registration for Plaintiff's Mark constitutes *prima facie* evidence of its validity and of Plaintiff's exclusive right to use Plaintiff's Mark pursuant to 15 U.S.C. § 1057(b).

22. Plaintiff's Mark has been used continuously by Plaintiff for a long duration and has never been abandoned.

23. Plaintiff's Mark is distinctive and identifies merchandise as goods from Plaintiff.

24. Plaintiff's Mark is distinctive when applied to the Plaintiff's products, signifying to the purchaser that the products come from a reputable source and are manufactured to certain quality standards.

25. Plaintiff has ensured that products bearing Plaintiff's Mark are manufactured to the highest quality standards.

26. The innovative marketing, extensive advertising, and unique nature of Plaintiff's products have enabled the Plaintiff's ROCKET BUBBLE brand to achieve widespread recognition. The widespread recognition, outstanding reputation, and significant goodwill associated with the Plaintiff's ROCKET BUBBLE brand have made Plaintiff's Mark an invaluable asset of Plaintiff.

27. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting Plaintiff's Mark. As a result, Plaintiff's Mark is widely recognized and exclusively associated by consumers, the public, and the trade as a source of high-quality products. Plaintiff's Mark has achieved tremendous recognition which has only added to the distinctiveness of Plaintiff's Mark. As such, the goodwill associated with Plaintiff's Mark is of incalculable and inestimable value to Plaintiff.

28. Plaintiff's sales of products under the ROCKET BUBBLE brand are significant.

29. In 2022, Plaintiff's annual sales of products under the ROCKET BUBBLE brand on Amazon reached about $500,000.00. In 2023, Plaintiff's annual sales of products under the ROCKET BUBBLE brand on Amazon reached about $650,000.00. In 2024, Plaintiff's annual sales of products under the ROCKET BUBBLE brand on Amazon reached about $800,000.00. In 2025, Plaintiff's annual sales of products under the ROCKET BUBBLE brand on Amazon are expected to continue growth at about 15%.

30. In 2023, Plaintiff's annual sales of products under the ROCKET BUBBLE brand on Walmart reached about $400,000.00. In 2024, Plaintiff's annual sales of products under the ROCKET BUBBLE brand on Walmart reached about $900,000.00, growing at an annual rate of about 30%. Plaintiff's Walmart advertising efforts accounted for about 15% of total Walmart sales.

31. After three years of strategic brand building and media exposure in the U.S., and based on the sales and brand awareness, Plaintiff's ROCKET BUBBLE brand value is currently estimated to be $5,000,000.00.

32. However, based on the Plaintiff's ROCKET BUBBLE brand market popularity and associated reputation and goodwill, Plaintiff became aware of multiple sellers on online platforms who also started to sell the same or similar products, through the same of similar channels of trade, utilizing Plaintiff's Mark. As such, Plaintiff filed this action to combat these Seller Aliases listed on **Schedule A** who are harming Plaintiff by offering to sell, selling, and shipping unlicensed Counterfeit Products that infringe and counterfeit Plaintiff's Mark.

33. Plaintiff has not entered a contract with or licensing agreement with Defendants for Plaintiff's Mark. Defendants are not authorized sellers of products bearing Plaintiff's Mark.

34. Due to Defendants' illegal activities, Plaintiff has suffered significant loss in market share, Plaintiff has not been able to realize the return of investment in Plaintiff's Mark, Plaintiff has lost profits and will lose future profit, Plaintiff has lost marketplace rankings and visibility, Plaintiff has lost complete control over Plaintiff's ROCKET BUBBLE brand, Plaintiff has lost reputation, and Plaintiff has lost associated goodwill.

35. Plaintiff filed this action to combat these Seller Aliases' "swarm of attacks" on the Plaintiff's Mark because filing individual causes of action against each infringer ignores the form of harm Plaintiff faces.

36. Defendants are partnerships, individuals, and/or unincorporated associations operating as fictitious seller aliases on online platforms who target sales to Pennsylvania residents by setting up and operating various, interactive "storefronts" under aliases via online retail websites.

37. Defendants' interactive sites are in English and accept U.S. Dollars.

38. Defendants target Pennsylvania consumers by selling, offering to sell, and/or shipping Counterfeit Products to the United States, including Pennsylvania, that infringe and counterfeit Plaintiff's Mark.

39. Based on the seller alias names and limited available information, Defendants reside and operate in the People's Republic of China or other foreign jurisdictions with lenient intellectual property enforcement systems or redistribute products from the same or similar sources in those locations. Aa a result, Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

40. Defendants, either individually or jointly, operate one or more e-commerce stores under the seller aliases listed in Schedule A. Through fictitious seller aliases and the anonymity allowed by marketplace platforms, Defendants purposely conceal their identity and the full scope of their operations.

41. Defendants have the opportunity to operate under a proper individual, partnership, or entity name, but Defendants willfully choose to operate under a fictitious seller alias.

## <u>DEFENDANTS' INFRINGING CONDUCT</u>

42. While each seller alias (or Defendant) alone may appear as some small-time infringer and counterfeiter, the actions of Defendants are of enormous detriment, coordinated, and related – even if no actual communication ever occurred between the aliases.

43. The infringement and counterfeiting empire Defendants participate in and take advantage of is a $500+ Billion Dollar industry. The U.S. Department of Homeland Security

recognizes this serious threat posed by Defendants, detailing the expansive nature as seen below (*See* Exhibit D):




44. Third party online platforms do not adequately subject sellers to verification and confirmation of their identities and products, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit C**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020).

45. "At least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary." **Exhibit D**, *Combating Trafficking in Counterfeit and Pirated Goods* prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans. Because these online platforms generally do not require a seller to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. *Id.* at 39.

46. Defendants engaged in fraudulent conduct when registering the seller aliases by providing false, misleading and/or incomplete information to e-commerce platforms to prevent discovery of their true identities and the scope of their interconnected e-commerce operations.

47. The e-commerce stores operating under the seller aliases appear sophisticated, fully interactive, and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, and/or PayPal. Defendants' e-commerce stores are in English. The e-commerce stores operating under the seller aliases include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer of products under Plaintiff's Mark.

48. Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating under the seller alias so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers of authorized products sold under Plaintiff's Mark.

49. Defendants regularly register new seller aliases for the purpose of offering for sale and selling infringing and counterfeit products, including the Counterfeit Products. Such seller alias registration patterns are one of many common tactics used by Defendants to conceal their identities and the scope of their infringing operations. Such tactics help Defendants avoid being shut down. Even after being shut down through enforcement efforts, Defendants may conveniently register another storefront, ASIN, or webpage under a new seller alias and continue to sell the Counterfeit Products.

50. Defendants use different fake names to keep selling despite Plaintiff's actions.

51. Defendants have bank accounts outside this Court's reach and move money there regularly to avoid paying any monetary judgment. In fact, financial records from similar Schedule A cases show that off-shore sellers frequently transfer money from U.S. accounts to foreign ones on a regular basis, and upon notice of a lawsuit, to avoid paying any judgment ordered by a court of law in the United States.

52. Defendants are involved in, review, and/or are in communication with one another via WeChat and QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, that provide litigation specific content to warn anonymous seller alias networks of upcoming lawsuits against their many respective product listings and aliases.

53. Defendants have the ability to quickly and easily change e-commerce store data, including but not limited to titles, descriptions, images, videos, Date First Available, and other product description information.

54. Even though Defendants operate under multiple fictitious seller aliases, the e-commerce stores operating under the seller aliases share unique identifiers establishing a logical relationship, such as templates with common design elements that intentionally omit reliable contact information, the same registration patterns, the same accepted payment methods, the same check-out methods, the same keywords and titles, the same or similar product descriptions, the same advertising tactics, the same or similar images and videos, similarities in pricing and quantities, and/or the same incorrect grammar and misspellings.

55. Defendants' Counterfeit Products appear to be manufactured by and come from common source(s), further establishing a logical relationship amongst Defendants.

56. Each Defendant, in a virtually identical manner, attempts to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their operation, utilizing fictitious seller aliases and providing no further, credible identifying information, further establishing a logical relationship amongst Defendants.

57. Each Defendant, in a virtually identical manner, is utilizing the same or similar channels of trade, in the same time period, further establishing a logical relationship amongst Defendants.

58. Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit Products in the same transaction, occurrence, or series of transactions or occurrences. Alternatively, Plaintiff asserts any right to relief against Defendants for the infringement of Plaintiff's Mark jointly or severally.

59. All Defendants take advantage of a set of circumstances - the anonymity and mass reach the internet affords - to sell counterfeit and infringing goods, including the Counterfeit Products, across international borders. Defendants each utilize fictitious seller aliases, at the same time, to violate Plaintiff's intellectual property rights as a swarm, with impunity.

60. All Defendants can easily and quickly transfer or conceal their funds in their use payment and financial accounts to avoid detection and liability in the event that the Plaintiff's infringement control efforts are discovered, or Plaintiff obtains a monetary award.

61. All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

62. The natural and intended byproduct of Defendants' logically related actions is the erosion and destruction of the goodwill and reputation associated with Plaintiff's ROCKET BUBBLE brand and the destruction of the legitimate market sector in which it operates.

63. The e-commerce stores operating under the seller aliases offer to sell, and stand ready, willing, and able to, and upon information and belief do, sell and ship Counterfeit Products to the United States, including Pennsylvania. *See* **Exhibits B.1-B.3**.

64. Questions of fact common to all Defendants will arise inherently do to the identical anonymous nature and foreign status of Defendants – requiring the same methods to investigate, uncover, and collect evidence about infringing and counterfeiting activity, based upon Defendants' same or similar use of Plaintiff's Mark on the same or similar Counterfeit Products – requiring the same legal and factual infringement analysis. *See* **Exhibits B.1-B.3**.

65. Defendants' use of the Plaintiff's Mark in connection with the advertising, distribution, offering for sale, and sale of Counterfeit Products, including the sale of Counterfeit Products into Pennsylvania, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

66. Defendants' counterfeiting use of the ROCKET BUBBLE brand has caused significant financial loss to Plaintiff.

67. As of April 2025, Plaintiff's estimated lost sales due to Defendants' infringing and counterfeiting activities is about $300,000.00.

68. Plaintiff's ROCKET BUBBLE brand value loss caused by Defendants is estimated to be $1,000,000.00.

## JURISDICTION AND VENUE

69. This is an action for infringement of Plaintiff's Mark arising under the Lanham Act, 15 U.S.C. § 1051, et seq. This Court has original subject matter jurisdiction over this claim under 28 U.S.C. §1331 and §1338.

70. Personal jurisdiction is proper because Defendants directly target consumers in the United States, including in Pennsylvania, through at least the fully interactive commercial Internet stores operating under the seller aliases, where Defendants advertise, display, offer to sell, and

stand ready, willing, and able to, and do, sell and ship Counterfeit Products to residents within the Western District of Pennsylvania. *See* **Exhibits B.1-B.3**. As a result, each Defendant has purposefully availed themselves of the privilege of conducting business in the forum state or purposefully directed their counterfeiting activities at the state; Plaintiff's injuries stems from the Defendants' forum-related activities of offering to sell, selling, and shipping Counterfeit Products to the forum-state; and the exercise of personal jurisdiction comports with traditional notions of fair play and substantial justice.

71. Pennsylvania also authorizes personal jurisdiction over the Defendants pursuant to 42 Pa. Cons. Stat. § 5322 (a). Defendants are systematically directing or targeting their business activities at consumers in the United States, including Pennsylvania, through internet platforms with such as Amazon.com under the seller aliases, through which consumers in the United States, including Pennsylvania, can and do view Defendants' Counterfeit Product listings, communicate with Defendants regarding their respective Counterfeit Products, place orders for Defendants' Counterfeit Products, and ship Defendants' Counterfeit Products to United States addresses, including Pennsylvania. *See* **Exhibits B.1-B.3**. Despite being from foreign nations, Defendants' e-commerce stores are in English and accept USD. The level of interactivity is extremely high, where consumers of Pennsylvania can: read the Counterfeit Product listing in English; communicate to Defendants about the Counterfeit Products; view the Counterfeit Products; purchase the Counterfeit Products; purchase the Counterfeit Products in USD; and ship the Counterfeit Products to their respective Pennsylvania addresses. Defendants, through fictitious seller aliases, utilize Amazon.com and other marketplace platforms for the sole purpose of conducting business transactions, as described above. The internet webpages owned and operated by Defendants, as described above, are purely commercial in nature and serve no other purpose.

The level of interactivity of these marketplace platform listings owned and operated by Defendants are extremely high and establish regular business with the U.S. and Pennsylvania, as described above. When creating the seller aliases, Defendants intended on receiving sales of Counterfeit Products from consumers in the United States, including Pennsylvania. Defendants take financial incomes from U.S. consumers, including Pennsylvania consumers, back to their foreign jurisdiction(s).

72. In addition, personal jurisdiction is proper pursuant to Federal Rule of Civil Procedure 4(k)(2), where "a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if: (A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws." Based on the limited information found on Defendants' Counterfeit Product listings and based on the Seller Aliases names of foreign origin, each of the Defendants is a foreign entity, individual, or unincorporated association not subject to any state's courts general jurisdiction, and exercising jurisdiction is consistent with the United States Constitution and laws.

73. Venue in the Western District of Pennsylvania is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events that give rise to the claim occur within this District, Defendants have committed acts of counterfeiting and infringement in and have significant contacts within this District – as described above, and Defendants as delineated in Schedule A are directly targeting their business activities of offering to sell, selling, and shipping the Counterfeit Products to this District.

74. In addition, based on information found on Defendants' Counterfeit Product listings and based on the seller aliases themselves, each of the Defendants is a foreign entity or

individual, and "a defendant not resident in the United States may be sued in any judicial district." 28 U.S.C. § 1391(c)(3).

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

75. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

76. Plaintiff owns Plaintiff's Mark.

77. Plaintiff's Mark is valid and legally protectable.

78. Plaintiff's Mark is very strong and distinctive, especially applied the enumerated goods and/or services on Plaintiff's Mark registration.

79. Defendants sell, offering for sale, distribute, and advertising infringing and counterfeit goods utilizing Plaintiff's Mark to the United States, including to the State of Pennsylvania.

80. Defendants have sold, offered to sell, marketed, distributed, and advertised products using infringing and counterfeit reproductions of Plaintiff's Mark, without Plaintiff's permission, to the United States, including Pennsylvania. *See* **Exhibit B.1-B.3**.

81. Defendants use the ROCKET BUBBLE mark on their Counterfeit Products.

82. Defendants' use of the ROCKET BUBBLE mark is identical to the Plaintiff's Mark.

83. Defendants market their Counterfeit Products in the same channels of trade as Plaintiff markets their legitimate products under Plaintiff's Mark.

84. Defendants' Counterfeit Products are goods and/or services directly enumerated and protected in Plaintiff's Mark registration. Defendants' Counterfeit Products are counterfeit in nature.

85. Defendants' use of Plaintiff's Mark on Counterfeit Products has and will continue to cause a likelihood of confusion.

86. Defendants' use of Plaintiff's Mark on Counterfeit Products has and will cause Plaintiff to suffer irreparable harm, including but not limited to, lost profits and lost future profits, loss of market share, loss of reputation, loss of goodwill, loss of control over Plaintiff's Mark, an inability to realize a return on investment, loss of marketplace visible and rankings, and tarnishment of Plaintiff's Mark.

87. Defendants had actual and constructive knowledge of Plaintiff's Mark and of Plaintiff's rights in Plaintiff's Mark when deciding to advertise, offer to sell, sell, and ship Counterfeit Products to the United States, including Pennsylvania.

88. Defendants are willfully infringing and intentionally using counterfeits of Plaintiff's Mark. Defendants' willful, intentional, and unauthorized use of Plaintiff's Mark is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit Products among the general public.

89. Defendants intentionally used Plaintiff's Mark on their Counterfeit Products to confuse consumers and misappropriate the significant goodwill and reputation of the ROCKET BUBBLE brand and Plaintiff.

90. Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

91. Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill associated with Plaintiff's Mark.

92. The injuries and damages sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, sale, and shipment of Counterfeit Products.

93. Defendants' advertising, offering for sale, sale, and shipment of Counterfeit Products into the United States, and Pennsylvania, was willful in nature based upon the dated history of Plaintiff's Mark, Defendants' actual or constructive knowledge of Plaintiff's Mark, the significant popularity of products under the Plaintiff's Mark, the strength and popularity of the ROCKET BUBBLE brand, the significant advertising of the ROCKET BUBBLE brand by Plaintiff, the identical use of Plaintiff's Mark, and the use of ficititous seller aliases by Defendants.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

94. Plaintiff hereby re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs.

95. Defendants' promotion, marketing, offering for sale, sale, and shipment of Counterfeit Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of Defendants' Counterfeit Products by Plaintiff.

96. By using Plaintiff's Mark in connection with the sale of Counterfeit Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and approval of the Counterfeit Products.

97. Defendants' false designation of origin and misrepresentation of fact as to the origin and/or approval of the Counterfeit Products to the general public involves the use of counterfeit marks on products enumerated in Plaintiff's Mark registration, and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

98. Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its ROCKET BUBBLE brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendants as follows:

a. Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116(a), and Federal Rule of Civil Procedure 65, enjoining Defendants, their agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell, and shipping their Counterfeit Products.

b. Entry of an Order that, upon Plaintiff's request, any internet marketplace website operators and/or administrators that are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, identify any e-mail address known to be associated with Defendants' respective Seller ID, and cease facilitating access to any or all e-commerce stores through which Defendants engage in the promotion, offering for sale, and/or sale of Counterfeit Products.

c. Entry of an Order that, upon Plaintiff's request, any internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu,Walmart.com, and wish.com, permanently remove any and all listings displaying or offering for sale Counterfeit Products under the seller aliases and/or Seller IDs, including any and all listings linked to the same seller or linked to any other alias seller identification name being used and/or controlled by Defendants to promote, offer for sale and/or sell Counterfeit Products.

d. Entry of an Order that, upon Plaintiff's request, any internet marketplace website operators and/or administrators who are provided with notice of the injunction, including but not limited to the online marketplaces Amazon.com, aliexpress.com, eBay.com, Joybuy, Temu, Walmart.com, and wish.com, immediately cease fulfillment of and sequester all goods of each Defendant or other seller under a Seller ID offering for sale the Counterfeit Product in its inventory, possession, custody, or control, and surrender those goods to Plaintiff.

e. Entry of an Order awarding Plaintiff statutory damages, for willful trademark infringement and counterfeiting pursuant to 15 U.S.C. § 1117(c)(2), of $2,000,000 for each and every use of Plaintiff's Mark by each Defendant.

f. In the alterative, Entry of an Order awarding Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for counterfeiting and infringement of Plaintiff's Mark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117.

g. Entry of an Order finding that this case is exceptional and an award to Plaintiff its attorney fees and costs.

h. Entry of an Order that, upon Plaintiff's request, any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs or other domain names, alias seller identification names, or e-commerce store names or store URLs used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), to be surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein.

i. Entry of an award of pre- and post-judgment interest on the judgment amount.

j. Entry of an order for any further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, under Rule 38 of the Federal Rules of Civil Procedure, requests a trial by jury of any issues so triable by right.

DATED June 30, 2025

Respectfully submitted,

/s/ Ge (Linda) Lei
Ge (Linda) Lei
Getech Law LLC
203 N. LaSalle St., Suite 2100,
Chicago, IL 60601
Attorney No.
Linda.lei@getechlaw.com
312-888-6633

*ATTORNEY FOR PLAINTIFF*